IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LAMAR CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,** § § § § | |
| **Plaintiff,** § § § | |
| **vs.** § | **CIVIL ACTION NO. _____** |
| § | |
| **J.T. b/n/f/ April S.** § § | |
| **Defendant.** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Lamar Consolidated Independent School District (LCISD or the District), Plaintiff, files this Original Complaint against J.T. b/n/f April S., Defendant, as follows:

### 1.
### Jurisdiction and Venue

1.1   This action arises under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i)(2)(A). The Court has jurisdiction of this action under the IDEA, 20 U.S.C. § 1415(i)(3)(A).

1.2   Venue properly lies in this Court pursuant to the general venue statute, 28 U.S.C. § 1391(b).

### 2.
### The Parties

2.1   LCISD is a public school district in the State of Texas. LCISD was the Respondent in the administrative proceeding below.

2.2     J.T. is a student in LCISD who qualifies for special education services under the IDEA. April S. is J.T.'s mother; both of whom were the Petitioners in the administrative proceeding below.[1]

## 3.
## Nature of the Action and Relief Sought

3.1     This is an action under the IDEA appealing the decision of a Special Education hearing officer to consider an administrative complaint filed against LCISD on behalf of J.T. J.T. filed the request for hearing seeking compensatory educational services for an alleged denial of a free appropriate public education due to the inappropriate actions of a former LCISD special education teacher.

3.2     After an evidentiary hearing, the hearing officer issued a decision on April 17, 2020, and determined J.T.'s claims were limited by Texas' one-year statute of limitations to those arising on or after November 20, 2018. *See* Decision of Hearing Officer, attached hereto as Exhibit A. The hearing officer found that LCISD denied the student a free appropriate public education "during Fall 2018." The hearing officer also found that LCISD's "prompt response" to the actions of the teacher "brought compliance with the student's IEP to ensure Student received a FAPE after January 2019" and through the date of the hearing. Having found the denial of a FAPE, the hearing officer ordered the School District to provide J.T. with, in part, "one full semester" of compensatory services (a total of 675 hours).

---

[1] The student's initials are used in compliance with General Order No. 2004-11 of the United States District Court, Southern District of Texas to protect the minor's privacy. The full identity of the Defendant will be revealed to the Court at a later date, if necessary.

2

3.3	The hearing officer's decision is erroneous as a matter of law, as it conflicts with applicable law. Additionally, the decision is not supported by the evidence presented in the hearing. As such, LCISD is entitled to an Order from this Court reversing and vacating those portions of the hearing officer's decision against LCISD.

## 4.
## Factual Background

4.1	J.T. transferred to LCISD's George Ranch High School (GRHS) at the beginning of the 2018-2019 school year from another school district in Texas. J.T. qualifies for special education services as a student with an Other Health Impairment based on his diagnosis of Rubinstein-Taybi Syndrome, Autism, an Intellectual Disability, and a Speech/Language Impairment in all areas of language (receptive, expressive and pragmatic) and articulation. Due to his significant needs, J.T. requires a highly modified curriculum taught largely in a self-contained special education program. He also requires a behavior intervention plan to address significant behavioral challenges including off-task behaviors and physical aggression (*e.g.*, throwing items, pushing, kicking, and spitting).

4.2	As with previous transitions, and as his mother anticipated, J.T. experienced behavioral challenges at GRHS. The ARD committee met several times during the Fall of 2018 to address behavioral concerns. On December 14, 2018, a staff member reported to GRHS administration that one of J.T.'s teachers had kicked J.T. in the shin while the class was waiting to get on the bus. The report prompted an investigation, including a review of the video confirming the kick, which would ultimately lead to the teacher's resignation. GRHS administration completed its investigation of the incident on December 20, 2018.

Ms. S. was asked to come to the campus to view the video of the incident. After viewing the video, Ms. S. asked school officials to review video from November 29, 2018, a date that Ms. S. reports J.T. had come home with scratches on his arm.

    4.3    Investigation of earlier video resulted in discovery of additional instances where the teacher had verbally agitated the student when directing him to pick-up things he had thrown on the floor, and an instance where she failed in an attempt to restrain the student who was throwing chairs in the classroom, thus causing both of them to fall to the floor. These additional incidents occurred during the three-week period between the November 29, 2018, event and the last event on December 20, 2018.

    4.4    In January, LCISD's Special Education Director, Ms. Tiffany Mathis, met with the parent and offered to provide J.T. with private school placement if the parent did not want J.T. to return to GRHS. Ms. Mathis also offered a transfer to another LCISD campus. The offers were not accepted. Instead, starting on January 16, 2019, the ARD committee agreed to the parent's request for full-time homebound services (four hours/week). The ARD committee also noted that Ms. Mathis would continue to collaborate with Ms. S. on J.T.'s educational programming.

    4.5    The ARD committee met again on January 25, 2019, to consider the concerns Ms. S. had with J.T. returning to school. Ms. S. made several requests including, but not limited to, extended school year services in the summer, 1:1 staff support for 15 minutes per subject, counseling to assist J.T. to learn how to communicate his concerns and express his needs, in-home training, parent training, additional behavior support by a specific provider of Ms. S.'s choice. The ARD committee agreed to all the requests, and in some

cases exceeded the requests. For example, the ARD committee agreed to 30 minutes of 1:1 per subject, to extensive staff training, and to pay for one-hour/week for six months of private counseling.

4.6     J.T. returned to GRHS for two days at the end of January 2019 after which Ms. S. no longer permitted him to return. Instead, the ARD committee met again on February 11, 2019, and, at Ms. S.'s request significantly increased the amount of homebound and related service, more than doubling the homebound to 10 hours/week. Additional services included speech therapy, occupational therapy, personal care services, adaptive physical education, and Applied Behavioral Analysis. The ARD committee also recommended that the LCISD Life Skills Facilitator be responsible for assessing J.T.'s current level of academic functioning and developing specific vocational goals.

4.7     J.T.'s first attorney filed a request for an administrative due process hearing on March 1, 2019, alleging the teacher's actions denied J.T. a free appropriate public education (FAPE) under the IDEA. In an attempt to resolve the complaint, LCISD made an Offer of Settlement on March 25, 2019. J.T. did not respond to the offer, and the parties engaged in discovery. The due process hearing was scheduled for September 10, 2019.

4.8     On April 29, 2019, the ARD committee met again to request a new evaluation of J.T.'s academic and functional needs. On June 6, 2019, the ARD committee met to offer extended school year services over the summer to address J.T.'s potential for regression of some skills during the summer months. The parent declined these services. The ARD committee also agreed to convene before the first day of the 2019-2020 school year to review the new evaluation.

4.9     The ARD meeting convened on August 16, 2019, to review the new evaluation and develop an educational program for the 2019-2020 school year. The progress reports for the goals implemented during the 2018-2019 school year noted J.T. had mastered the goals as of June 6, 2019. The ARD committee recommended, among other things, new goals, speech therapy, and adaptive physical education. The mutually agreed upon plan provided a combination of homebound instruction and instruction at GRHS. J.T. did very well in the placement through the date of the due process hearing.

4.10    Shortly before the initial due process hearing was to convene, J.T. changed lawyers and the new attorney dismissed the request for hearing on September 9, 2019. However, J.T. then refiled a renewed request for hearing on November 20, 2019—approximately a year after the events giving rise to this dispute, again complaining that the teacher's actions denied J.T. a free appropriate public education during Fall 2018.

4.11    The hearing convened on January 21-23, 2020. In order to ensure J.T.'s educators that the hearing was unrelated to their efforts to educate J.T., just before the hearing convened Ms. S. provided J.T.'s teachers and administrator with personal notes thanking them for their "work, care and patience" with J.T. She noted the confidence she had in J.T.'s education thanks to the GRHS principal ensuring the staff were "highly effective." In sum, Ms. S. wrote, "[p]lease know that you are a blessing to my family."

## 5.
## Claim for Relief—IDEA

5.1     The hearing officer's conclusion that LCISD denied J.T. a FAPE and he is entitled to relief is contrary to the law and the facts. There is no evidence in the record that

J.T. suffered any educational harm as a result of the inappropriate actions of the former teacher. Moreover, there is no evidence that at the time of the hearing any educational deficit existed that required an award of compensatory services. The hearing officer's determination that LCISD had ensured J.T. was receiving a FAPE for the entire year preceding the hearing should have resulted in the denial of any relief to J.T. Although Ms. S. testified that J.T. is not currently where she would expect him to be had the events of the Fall of 2018 not transpired, there is no evidence beyond her speculative expectation to support the statement. In fact, Ms. S. acknowledged that there is no way to know one way or the other what, if any, impact the teacher's actions had on J.T.

    5.2    In contrast to Ms. S.'s speculation, there is abundant evidence in the record supporting the conclusion that LCISD ensured J.T. received a FAPE. With the extensive collaboration between Ms. S., Mathis, the homebound team, and the rest of the ARD committee, J.T. mastered his academic and nonacademic goals, goals that Ms. S. agreed in November 2018 were appropriately challenging (and the hearing officer agreed were appropriate). In fact, Ms. S. testified that because J.T. was receiving services at home, she had first-hand knowledge of his success on those goals. With respect to the private counseling LCISD paid for, J.T.'s attorney conceded that they were not challenging the appropriateness of those services. On STAAR Alt testing, J.T. did exceptionally well on the Biology STAAR, passed the Algebra I STAAR and was very close (a few questions away) from passing the English/Language Arts STAAR. In short, assuming *arguendo* that J.T. did not make appropriate progress in the fall of 2018 due to the actions of the teacher, any shortcomings were remedied by the supports and services agreed to by the ARD

committee in January 2019, and thereafter. Put yet another way, LCISD's response ensured the teacher's actions were rendered harmless.

5.3     The hearing officer's determination that relief was warranted is not supported by any evidence in the record. The erroneous nature of the hearing officer's relief is highlighted by the fact that he ordered extensive training for school employees who were admittedly providing the student a FAPE since January 2019 and were, in the mother's words, "effective" and a "blessing to the family." It is also erroneous in light of the fact the limitations period began on November 20, 2018, well into the Fall 2018 semester and the first evidence of inappropriate action by the teacher is November 29, 2018. In addition, despite finding "no evidence that any counseling services were necessary to ensure receipt of a FAPE," the hearing officer awarded reimbursement for counseling services.

5.4     Not only is the hearing officer's decision fraught with error, but several actions and rulings of the hearing officer during the three-day hearing denied LCISD due process. For example, the hearing officer permitted a witness to testify as a rebuttal witness despite the fact that the witness was known to J.T.'s attorney but not disclosed prior to the hearing, and the testimony provided by the witness was not in any way intended to rebut the testimony sponsored by LCISD.

# 6.
# Prayer

6.1     LCISD prays that the Court receive the records of the administrative proceedings as required by the IDEA and award it the following relief:

(1) enter a judgment reversing and vacating the hearing officer's decision to the extent it was against LCISD, and find that LCISD provided J.T. with a free appropriate public education as required by the IDEA;

(2) enter a judgment reversing and vacating the portion of the hearing officer's decision that found J.T. was entitled to relief;

(3) enter a judgment in favor of LCISD denying all relief ordered by the hearing officer and declaring that J.T. is not a prevailing party entitled to an award of attorney's fees; and

(4) award LCISD any other and further relief as the Court determines is appropriate.

Respectfully submitted,

ROGERS, MORRIS & GROVER, L.L.P.

_____
AMY C. TUCKER
State Bar No. 24042068
Fed. I.D. No. 36798
Email: atucker@rmgllp.com
RICHARD A. MORRIS
State Bar No. 14497750
Fed. I.D. No. 15004
Email: rmorris@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone: 713/960-6000
Facsimile: 713/960-6025

ATTORNEYS FOR PLAINTIFF LCISD