United States District Court
Southern District of Texas
**ENTERED**
March 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAMAR CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, | § § § § § § § | CIVIL ACTION NO 4:20-cv-02353 |
| Plaintiff, | § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| J.T. b/n/f APRIL S., | § § | |
| Defendant. | § | |

OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT

The motion by Plaintiff Lamar Consolidated Independent School District for summary judgment is granted. Dkt 33.

1. Background

This case concerns alleged discrimination by Lamar Consolidated Independent School District against an intellectually disabled student named J.T. April S. is his mother.

J.T. attends (or perhaps by now, attended) George Ranch High School. George Ranch is part of Lamar CISD and is located in Fort Bend County, Texas, roughly ten miles southwest of Sugar Land. J.T. started at George Ranch in the Fall of 2018 upon transfer into Lamar CISD. AR 6; see also Dkt 1 at ¶ 4.1.

J.T. has various learning disabilities, including Rubenstein-Taybi syndrome. Among other symptoms, this causes him to experience limited strength, heightened alertness to stimuli, subaverage general intellectual

functioning, deficits in adaptive behavior, impaired articulation, and mood changes (including temper outbursts and anxiety). Due to his various disabilities, J.T. occasionally becomes very upset and reacts angrily, at times by yelling or throwing his belongings. AR 6–7; see also Dkt 1 at ¶ 4.1.

As a disabled student in a school district receiving federal funding, J.T. was entitled to receive a free, appropriate education (or *FAPE*) under the Individuals with Disabilities in Education Act. See 20 USC § 1412(a)(1)(A). The Act requires that each FAPE be tailored to the needs of the individual student according to the design of an independent educational plan (known as an *IEP*) or behavioral intervention plan (known as a *BIP*). See 20 USC §§ 1414(d) & 1415(k).

The appropriate instructive response to the occasional outbursts by J.T. is addressed in his designated BIP. Much of this dispute concerns how one former teacher responded to such outbursts and otherwise treated J.T. That teacher was Regina Thurston, who was new to George Ranch at the start of the Fall 2018 semester and resigned at its end. AR 39 & 3285. Thurston had the following inappropriate interactions with J.T. during that one semester:

- o *On November 29th,* Thurston forcefully grabbed J.T. in the midst of an outburst while he was on the ground and threw his shoes across the room. Video Ex 28.

- o *On December 14th,* while students waited to get on the bus, Thurston told J.T. "if you want to kick me then walk over here and kick me"—and when he did, Thurston then kicked J.T. in the shin. Video Ex 25.

- o *On December 18th,* J.T. became upset in response to a loud video and turned over his desk, after which Thurston dumped additional items on the floor and yelled at him to "pick it up." Video Ex 29.

- *On December 19th,* J.T. became physically aggressive, in response to which Thurston grabbed him by the arm and shoved him to the ground. Video Ex 26.
- *On December 20th,* after J.T. threw his desk to the ground, Thurston pushed J.T. from a ball chair onto the floor. Video Ex 30.

AR 17–20. Recordings of each incident were submitted as exhibits together with the administrative record.

The December 14th and 19th incidents—and how Lamar CISD responded to them—are the most important for purposes of the current motion.

As for the December 14th incident, video captures only a brief encounter between J.T. and Thurston. Close inspection does show Thurston kicking J.T. in the shin. Video Ex 25 at 1:03–1:10. An employee reported this incident the day it occurred, prompting the school to open an investigation. AR 17, 3221. Assistant Principal Shawna Jennings claims to have been informed of the incident on December 18th by an associate principal named Greg Tielke. Tielke later asked Jennings to review video of the incident as part of the investigation. Her first attempt to do so (on December 19th) was unsuccessful, apparently having been directed to watch the wrong tape. She tried again successfully on the 20th. But she says that she was unable to confirm the allegation because she didn't know how to slow the video to see what exactly transpired. She directed Tielke to review the video further, and he confirmed the allegation. Dkt 33-1 at 2.

As for the December 19th incident, video captures approximately thirty minutes of J.T. throwing items and knocking over chairs, with staff—primarily Thurston—confronting and sometimes attempting to calm him. Jennings can be seen coming in and out of the room throughout the incident. She first enters when Thurston is quite close to J.T. and directing him to pick up chairs he had knocked to the floor. Around this time, J.T. moves like he's going to throw another chair, and Thurston grabs him

3

and forces him onto his ball chair. Video Ex 26 at 9:40–10:00. This occurs within Jennings's line of view, but she looks away momentarily and claims not to have seen "their interactions when he was on the ball chair." Dkt 33-1 at 3.

Jennings is still near the main door when the most inappropriate behavior by Thurston occurs, not more than thirty seconds later. The video shows J.T. throwing a chair into the classroom's kitchen, which is tucked away in the back corner of the classroom and partly separated from the main room by storage cubbies. Thurston follows J.T. to the kitchen after the chair lands there. The video shows her swatting a small trash can from his hands, then grabbing him and forcing him to the ground, bringing herself down, too. Video Ex 26 at 10:12–10:38. Jennings claims that she saw none of this from the entry of the classroom, in part because the cubbies obstructed her view. Dkt 33-1 at 3.

On December 20th, Thurston called April S. to inform her that she was about to be fired for having kicked J.T. on the 14th—further explaining that "they've been out to get me," referring to school officials. AR 3221. That same day, April S. was asked to watch the video of Thurston kicking J.T. in the shin. AR 3222. This apparently prompted her to request to watch other videos, leading to the discovery of the incidents on November 29th, December 18th, and December 20th. See AR 20–21, 3227, 3254; Dkt 12 at ¶¶ 30, 53.

Under pressure of the investigation and potential termination, Thurston resigned at the end of the semester. Nothing indicates that the November 29th, December 18th, or December 20th incidents were brought to the attention of school officials before Thurston resigned.

April S. filed a complaint with the Texas Education Agency on behalf of J.T., alleging that Lamar CISD had denied him the FAPE to which he was entitled under the IDEA. A special education hearing officer of the TEA conducted a hearing and eventually determined that J.T. was denied a FAPE for the Fall 2018 semester. AR 1–53.

Lamar CISD then initiated this action with a complaint filed in July 2020 to appeal this administrative decision. Dkt 1. J.T. answered and asserted counterclaims for violations of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and equal protection under the Fourteenth Amendment pursuant to 42 USC § 1983. See Dkts 10 & 12 at ¶¶ 164–206. April S. also brought a counterclaim in her individual capacity for economic loss and emotional distress. Dkt 12 at ¶¶ 207–210.

Lamar CISD previously moved for partial summary judgment to reverse and vacate certain aspects of the decision by the hearing officer. That motion was granted upon determination that Lamar CISD had provided J.T. a FAPE during the Fall 2018 semester. Dkt 32. In particular, it was determined that the school district had designed and implemented an appropriate IEP for J.T. And although the school district had fallen short in some respects in monitoring Thurston, it had promptly responded to and remediated any such shortcomings. Id at 7–14.

That ruling left remaining only the counterclaims by J.T. and April S. Now pending is a further motion by Lamar CISD for summary judgment on those claims. Dkt 33.

2.   Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2020). Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

### 3. Analysis

Lamar CISD is entitled to summary judgment on the Section 1983 claim and the claims brought by April S. in her individual capacity, which J.T. didn't attempt to defend in response. More importantly, summary judgment is also appropriate on the Title II and Section 504 claims, primarily because J.T. hasn't shown that the school district intentionally discriminated against him.

#### a. ADA and Rehabilitation Act

Title II of the ADA and Section 504 of the Rehabilitation Act both prohibit covered public entities from discriminating on the basis of disability. 42 USC § 12132; 29 USC § 794. "The remedies, procedures, and rights available under the Rehabilitation Act parallel those

available under the ADA." *Cadena v El Paso County*, 946 F3d 717, 723 (5th Cir 2020). "Jurisprudence interpreting either section is applicable to both." *Hainze v Richards*, 207 F3d 795, 799 (5th Cir 2000).

To make out a *prima facie* case of disability discrimination under both statutes, a plaintiff must show that (i) he's a qualified individual within the meaning of the ADA; (ii) he's being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (iii) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Cadena*, 946 F3d at 723, quoting *Melton v Dallas Area Rapid Transit*, 391 F3d 669, 671–72 (5th Cir 2004). But more is required when (as here) a plaintiff seeks compensatory damages rather than injunctive relief. A plaintiff must in that case prove that the defendant *intentionally* discriminated against him. Id at 724, citing *Delano-Pyle v Victoria County*, 302 F3d 567, 574 (5th Cir 2002). While the Fifth Circuit hasn't "delineate[d] the precise contours" of this intentional-discrimination standard, it clearly entails showing "something more than 'deliberate indifference.'" Ibid, citing *Miraglia v Board of Supervisors of Louisiana State Museum*, 901 F3d 565, 575 (5th Cir 2018).

A public entity may be held vicariously liable for discriminatory conduct of employees in this Circuit. *Delano-Pyle*, 302 F3d at 574–75. But J.T. notably doesn't pursue vicarious-liability claims against Lamar CISD. He instead seeks to hold Lamar CISD directly liable for its alleged failures in addressing or preventing Thurston's conduct. For example, see Dkt 12 at ¶¶ 2, 172.

J.T. advanced several distinct theories of discrimination in seeking to hold Lamar CISD directly liable. Each is considered below.

### i.   Claim regarding response to abuse

J.T. first seeks to hold Lamar CISD liable on a theory that it "failed to respond appropriately to known abuse" by

Thurston. Dkt 12 at ¶¶ 172, 188. The parties don't dispute in this regard that J.T. has a disability that affords him the protections of Title II and Section 504—satisfying the first element of his *prima facia* case. Their dispute instead pertains to proper analysis of whether disability discrimination occurred under the second and third elements.

Lamar CISD proposes application of the framework adopted by the Supreme Court in the Title IX decision of *Gebser v Lago Vista Independent School District*, 524 US 274, 290 (1998). Dkt 33 at 14. As modified to this context, *Gebser* would require J.T. to show that (i) an appropriate person working for Lamar CISD, (ii) had actual notice of discrimination by Thurston, and (iii) responded with something more than deliberate indifference. See 524 US at 290. *Gebser* defined *appropriate person* as "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [district's] behalf." Ibid.

J.T. opposes this framework. In doing so, however, he does little more than argue that *Gebser* doesn't apply because it's a Title IX case. Dkt 40 at 14. He offers no coherent alternative framework for analyzing his claims.

Lamar CISD cites in its reply a recent, unpublished Fifth Circuit decision that applied the *Gebser* framework to Title II and Section 504 claims. Dkt 43 at 3, citing *Harrison v Klein Independent School District*, 856 F Appx 480, 483–84 & n 5 (5th Cir 2021); accord *J.S. III ex rel J.S. Jr. v Houston County Board of Education*, 877 F3d 979, 987 (11th Cir 2017). It will thus be applied in this case as well, if for no other reason than no suitable alternative is suggested. Whether the *Gebser* framework should apply in all Title II and Section 504 cases (including those alleging vicarious liability) is unnecessary to decision and thus left unaddressed.

*As to the first Gebser prong,* the parties agree that Assistant Principal Jennings is an appropriate person. Dkts 33 at 14 & 40 at 14.

8

*As to the second Gebser prong,* viewed in the light most favorable to J.T., Jennings had actual notice. By her own account, she was made aware on December 18th of the allegation that Thurston had on December 14th kicked J.T. in the shin. Dkt 33-1 at 2. The video of the December 19th incident provides further support that Jennings had actual notice of possible discrimination. Jennings was in the room for the most concerning parts of Thurston's interaction with J.T. And although she doesn't appear to have seen what transpired in the kitchen, she does appear to have seen some of the confrontation on the ball chair shortly before.

*As to the third Gebser prong,* the Supreme Court and the Fifth Circuit "recognize that in ruling on a motion for summary judgment, a district court can determine, as a matter of law, that a party was not deliberately indifferent.*" I.F. v Lewisville Independent School District*, 915 F3d 360, 370 (5th Cir 2019), citing *Davis ex rel LaShonda D. v Monroe County Board of Education*, 526 US 629, 649 (1999). Regardless of the exact contours of the standard for *intentional* discrimination, *deliberate indifference* is a lesser (though still "extremely high") standard to meet. *Domino v Texas Department of Criminal Justice*, 239 F3d 752, 756 (5th Cir 2001). Fifth Circuit precedent makes it clear that "merely unreasonable conduct" isn't enough, and that "negligent delays, botched investigations of complaints due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference." *I.F.*, 915 F3d at 369 (Title IX case) (citations omitted).

No one disputes that Thurston's conduct was inexcusable. But J.T. hasn't sponsored evidence providing any reasonable basis to conclude that Lamar CISD responded with deliberate indifference to disability discrimination. The response by Jennings and other school employees subordinate to her certainly wasn't deliberately indifferent. Unrebutted evidence instead shows that someone reported the December 14th incident shortly after

it occurred. The school promptly opened an investigation, which was itself ongoing when the December 19th incident occurred five days later. Jennings played a role in this investigation after Tielke (an associate principal) informed her of the abuse on the 18th. By the evening of the 19th, Jennings had attempted to watch the video of the December 14th incident but had trouble doing so. By the 20th, Tielke had confirmed the allegation at the request of Jennings, and April S. was called to the school to review the video. Dkt 33-1 at 2; AR 20. Thurston meanwhile had been told that her employment would be terminated on account of what the investigation uncovered. AR 3221. She instead decided to resign at the end of that semester. See AR 3285.

All told, Thurston was a teacher at George Ranch for a single semester. And not a full week had passed between the report of the December 14th incident and her being on the way out the door. Even less time had passed between Jennings first becoming aware of the incident and Thurston's exit. The deliberate-indifference standard isn't met on undisputed facts such as these. And because J.T. can't satisfy that standard, it follows that he likewise can't clear the higher intentional-discrimination standard. See Dkt 43 at 2.

ii.   Failure to accommodate

J.T. separately asserts Title II and Section 504 claims on a theory that Lamar CISD failed to accommodate his disability. Dkt 12 at ¶¶ 168, 171, 186. The exact nature of the accommodation that J.T. says was necessary is unclear from his pleading. In response to the motion for summary judgment, he only generally asserts—without specification of record evidence—that Lamar CISD "failed to make reasonable accommodations and modifications for J.T.'s limitations through their failure to provide necessary, appropriate, competent, appropriately supervised, and trained support staff." Dkt 40 at 19.

Fifth Circuit decisions of course recognize that failing to accommodate a disabled person can itself qualify as disability discrimination under Title II and Section 504. A

failure-to-accommodate claim requires proof that the public entity knew of both the disability suffered by the plaintiff and the limitations experienced as a result of the disability. To prevail on such a claim, the plaintiff typically must have expressly requested and been denied an accommodation. *Windham v Harris County*, 875 F3d 229, 236–37 (5th Cir 2017). But proof of a request for an accommodation isn't necessary when "'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." Id at 237, quoting *Taylor v Principal Financial Group Inc*, 93 F3d 155, 165 (5th Cir 1996). The defendant's failure to act when it has notice (in either respect) that an accommodation is necessary may amount to intentional discrimination. See *Phillips ex rel J.H. v Prator*, 2021 WL 3376524, *3 (5th Cir 2021) (unpublished).

Lamar CISD was no doubt on notice of the need for an accommodation for J.T.'s learning disability. But it's been previously determined by prior order that Lamar CISD, as a matter of law, provided J.T. a FAPE during the semester that Thurston was employed. Dkt 32. Provision of such a FAPE itself indicates that J.T.'s disability and attendant limitations were accommodated during the same semester. Cf *D.A. ex rel Latasha A. v Houston Independent School District*, 629 F3d 450, 454 (5th Cir 2010) (noting that "resolution of an IDEA claim in the school district's favor will frequently preclude parents' resort to redundant claims under § 504 and ADA"); *Estate of Lance v Lewisville Independent School District*, 743 F3d 982, 992–93 (5th Cir 2014) (discussing similar propositions).

Beyond this, J.T. hasn't shown other "indications that further accommodations were necessary"—or that the school district failed to provide them. *Smith v Harris County*, 956 F3d 311, 320 (5th Cir 2020). The only allegedly "obvious" deficiency in support staff for J.T. was Thurston. And the undisputed evidence shows that her deficiency was brought to the attention of Lamar CISD on December 18th, leading to an investigation that prompted her resignation

within approximately one week. This deficiency in *Thurston* was thus promptly and directly addressed by the school district.

J.T. hasn't submitted evidence to support allegations of broader staff deficiencies that might amount to failing to accommodate J.T.'s disability. Indeed, his claims are largely conclusory in this respect. As such, they are unavailing.

### iii.   Other theories

The counterclaims brought by J.T. potentially suggest other theories under Title II and Section 504. One pertains to a hostile educational environment. Another references enforcement of regulations enacted under Title II and Section 504. Dkt 12 at ¶¶ 173, 175, 190.

Lamar CISD moves against these to the extent stated. Dkt 33 at 18–20. J.T. in response elliptically notes that he didn't intend to bring the former claim. Dkt 40 at 19–20. And he doesn't attempt to defend the latter. Such claims are thus deemed abandoned and will be dismissed. See *Henderson v Wells Fargo Bank NA*, 974 F Supp 2d 993, 1017 (ND Tex 2013), citing *Black v North Panola School District*, 461 F3d 584, 588 n 1 (5th Cir 2006).

### iv.   Emotional distress damages

J.T. seeks to recover damages for emotional distress. See Dkt 12 at 224. Lamar argues that such damages aren't available under either Title II or Section 504. Dkt 33 at 20–21. J.T. concedes their unavailability under Section 504 but argues their potential under the ADA. Dkt 40 at 21.

Given the above resolution, whether the ADA permits emotional distress damages needn't be decided. But see *Montgomery v District of Columbia*, 2022 WL 1618741, *23 (DDC) (finding such damages unavailable under the ADA). Even assuming their availability in some instances, they aren't available on the facts here, where no underlying violation occurred.

v.    Conclusion

All theories under which J.T. pleaded his Title II and Section 504 claims fail. Summary judgment will thus be granted on these claims.

b.    Remaining claims

J.T. brought a claim under Section 1983 in addition to his claims under Title II and Section 504. Dkt 12 at ¶¶ 192–206. April S. also brought vague claims in her individual capacity for economic loss and emotional distress. Id at ¶¶ 207–10. Lamar CISD identifies serious deficiencies with these claims in its motion for summary judgment. Dkt 33 at 21–26. J.T. nowhere defends the claims in response. They are thus treated as abandoned and will be dismissed. See *Henderson*, 974 F Supp 2d at 1017.

4.    Conclusion

The motion by Plaintiff Lamar Consolidated Independent School District for summary judgment is GRANTED. Dkt 33.

This action will be DISMISSED WITH PREJUDICE.

A final judgment will issue by separate order.

SO ORDERED.


Signed on March 24, 2023, at Houston, Texas.


Hon. Charles Eskridge
United States District Judge